## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| BLAKE MODLIN | : | Jury Trial Demanded |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civil Action No. |
| PIAZA MANAGEMENT COMPANY | : | |
| d/b/a MERCEDES BENZ; | : | |
| MERCEDES BENZ OF WEST CHESTER; | : | |
| MERCEDES BENZ USA, LLC; | : | |
| PEG PARK (individually); | : | |
| EDUARDO MILLAN (individually); | : | |
| MICHAEL STRICKLAND (individually); | : | |
| MIGUEL FLORES (individually), and | : | |
| DANIEL PIAZZA (individually) | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Blake Modlin by and through their attorneys, Derek Smith Law Group, PLLC, hereby files the following civil action complaint against Defendants, Piazza Management Company, Mercedes Benz of West Chester, Mercedes Benz USA, LLC, Peg Park, Eduardo Millan, Michael Strickland, Miguel Flores, and Daniel Piazza (collectively "Defendants") for violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRC").

## PARTIES

1.       Plaintiff, Blake Modlin is an adult individual and resides in the Commonwealth of Pennsylvania with an address for purposes of correspondence at 1904 North 2nd Street, Unit 2B, Philadelphia, PA 19122.

2.       Defendant, Piazza Management Company, individually and d/b/a Mercedes Benz is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 1100 1st Ave, King of Prussia, PA 19406.

3.       Defendant, Mercedes-Benz of Westchester, individually and d/b/a Mercedes Benz is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

4.       Defendant, Mercedes-Benz USA, LLC is, and at all relevant times was, a company duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1 Mercedes-Benz Drive, Sandy Springs, Georgia 30328.

5.       Defendant, Mercedes-Benz is, and at all relevant times was, a company duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1 Mercedes-Benz Drive, Sandy Springs, Georgia 30328.

6.       Defendant, Peg Park is an adult female who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1100 1st Ave, King of Prussia, PA 19406.

7.    Defendant, Eduardo Millan is an adult male who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

8.    Defendant, Michael Strickland is an adult male who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

9.    Defendant, Miguel Flores is an adult male who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

10.    Defendant, Daniel Piazza is an adult male who aided and abetted the gender discrimination, sexual harassment and retaliation who resides in the commonwealth of Pennsylvania with an address for the purposes of correspondence at 1260 Wilmington Pike, West Chester, PA 19382.

11.    At all times material, Defendants was Plaintiff's employer and employed at least 15 employees.

12.    At all times material, Plaintiff, Blake Modlin worked in the Commonwealth of Pennsylvania such that Defendants were required to consider Plaintiff, Blake Modlin's rights under the Pennsylvania Human Relations Act.

13.    At all times material, Defendants violated Plaintiff's rights under the Pennsylvania Human Relations Act, in addition to Title VII of the Civil Rights Act of 1964.

14.    At all times material, Defendants were Plaintiff's joint and sole employers.

## JURISDICTION AND VENUE

15.     This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964.  This Court also has supplemental jurisdiction over the Commonwealth Law Causes of Action.

16.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the Philadelphia County in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

17.     On or around November 7, 2022, Plaintiff Blake Modlin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein (Charge No. 530-2023-00227).

18.     Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

19.     Plaintiff's rights under the Pennsylvania Human Relations Act will be ripe for suit one year after Plaintiff's Charge of Discrimination was dual filed at the PHRC.

20.     On or around October 25, 2022, the EEOC issued and sent a Dismissal and Notice of Rights to Plaintiff, thereby exhausting their administrative remedies.

21.     This action is hereby commenced within ninety (90) days of the date when Plaintiff received the Dismissal and Notice of Rights.

## MATERIAL FACTS

22.     On or around August 21, 2021, Plaintiff, Blake Modlin began their employment with Defendant, Mercedes Benz of West Chester as a receptionist.

23.     At all times material, Plaintiff worked in Defendants' West Chester, Pennsylvania dealership located at 1260 Wilmington Pike, West Chester, Pennsylvania 19382.

24.    Plaintiff maintained their position as a receptionist for the entire duration of their employment with Defendants.

25.    From the beginning of Plaintiff's employment, they were subjected to severe sexual harassment by multiple employees for Mercedes Benz Westchester including the Defendant's General Sales Manager, Eduardo Millan.

26.    Defendant Millan began forcing Plaintiff into his office on a daily basis, in order to subject them to severe sexual harassment including attempting to coerce them into accompanying him to Las Vegas and sharing a hotel room with him.

27.    Plaintiff was forced away from their work and into Defendant, Eduardo Millan's personal office where Plaintiff sat at Defendant, Eduardo Millan's desk for about 3 hours while Defendant, Eduardo Millan probed Plaintiff with personal questions about their dating life and other very personal issues including where Plaintiff lived, why they moved, who they like, why they liked them, who they were dating, and many other personal questions.

28.    Defendant, Eduardo Millan continued this harassment on a daily basis such that Plaintiff was afraid to come to work.

29.    Plaintiff reported this sexual harassment multiple times and was still forced to continue working with Defendant Eduardo Millan.

30.    Plaintiff continued to be subjected to working directly with Defendant Eduardo Millan until their termination.

31.    Defendants chose to do nothing in response to Plaintiff's many reports of sexual harassment involving Defendant Eduardo Millan and other employees of Defendants.

32.    Eduardo Millan used his possession and power, given to him by Mercedes Benz Westchester, to coerce Plaintiff into engaging in a sexual relationship with him.

33.    From the first week of employment there were issues of sexual harassment as Plaintiff was singled out and subjected to a hostile work environment that continued from the first week until their termination.

34.    This sexual harassment continued over the course of the next several months and escalated.

35.    By way of example only, Plaintiff had a trip planned New York and was going with a dear friend who just happens to be male.

36.    Defendant, Eduardo Millan approached Plaintiff in front of other managers and employees.  Defendant, Eduardo Millan stated that Plaintiff's friend had one reason to go on the trip - "to get laid."

37.    Defendant, Eduardo Millan described to Plaintiff all the reasons that Plaintiff's long-time friend "pretended to be friends" with Plaintiff, that that Plaintiff's long-time friend only wanted sex from Plaintiff.

38.    Defendant, Eduardo Millan stated in words or substance that Plaintiff was too naïve to understand that Plaintiff was only being taken advantage of for sex.

39.    Defendant, Eduardo Millan probed Plaintiff about the sleeping arrangements and wanted to know where they were staying.

40.    Defendant, Eduardo Millan concluded that only Defendant, Eduardo Millan could take care of Plaintiff and stated that he would watch out for them on the trip.

41.    Defendant, Eduardo Millan made this claim on multiple occasions and informed Plaintiff that the solution was that Plaintiff should spend more time with Defendant, Eduardo Millan.

42.    Plaintiff rejected Defendant Millan's advances and regularly protested his conduct in the workplace.

43.    Plaintiff was excited to go on a trip with a friend and Defendant, Eduardo Millan turned that into a dark scenario where Plaintiff was only being used for sex.

44.    Defendant, Eduardo Millan asked countless questions over many hours of a personal nature that extended to issues related to sex and sleeping arrangements

45.    Defendant Millan suggested that Plaintiff was too stupid to understand that they were being taken advantage of.

46.    These  and similar conversations occurred on a regular basis where Defendant, Eduardo Millan would force Plaintiff away from their work to the extent that other employees disliked Plaintiff because they mistakenly believed Plaintiff refused to work.

47.    In or around November 2021, there was a meeting/conference in Las Vegas and Defendant, Eduardo Millan was talking to Plaintiff in his office regarding the trip.

48.    Defendant, Eduardo Millan was complaining about the trip and how the trip was not going to be "fun."

49.    Defendant, Eduardo Millan stated that the way to make it fun would be if Plaintiff accompanies him.

50.    Defendant, Eduardo Millan suggested that Plaintiff should accompany him and share his hotel room.

51.    Plaintiff refused Defendant Millan's advances and stated, "there is never going to be a time when I go to Vegas with you."

52.    During these instances, Defendant, Eduardo Millan, would continuously ask Plaintiff, Blake Modlin about their dating life and commented on their inability to think for themselves.

53.    Defendant, Eduardo Millan is a man in his fifties who used his position and power afforded to him by Mercedes Benz Westchester to coerce Plaintiff, Blake Modlin into engaging in a sexual relationship with him.

54.    The conduct and comments of a sexual nature based on Plaintiff's gender were severe and pervasive and significantly interfered with Plaintiff's work environment such that Plaintiff required medical intervention for the emotional distress this caused.

55.    Plaintiff, Blake Modlin made it clear that they had no interest in pursuing a romantic relationship, but the sexual harassment continued, and they were forced to work with Defendant, Eduardo Millan every time they went to work.

56.    Plaintiff, Blake Modlin has also been subjected to severe and pervasive sexual harassment and/or gender discrimination by several other employees including Tysean Lucas and Brandon Copeland.

57.    In or around November 21, 2021, Plaintiff, Blake Modlin was subjected to harassment by Defendants' salesperson, Brandon Copeland.

58.    While at work, Plaintiff would overhear Mr. Copeland tell employees that they were having sex with Defendant, Eduardo Millan, and that they had multiple sexual partners.

59.    Stories about Plaintiff's sex life and sexual partners became regular discussion and Plaintiff was forced to hear them when they worked.

60.    The sexual harassment became so pervasive that employees were addressing them directly with Plaintiff, who had to answer questions about who they were having sex with every time they worked.

61.    Mr. Copeland also began to refer to Plaintiff as a "snowflake", and a "communist" due to Plaintiff's gender and use of the identifying pronouns, "they/them".

62.     In or around late November 2021, Plaintiff complained to Defendants' Human Resources Department of Mr. Copeland's harassment.

63.     Brandon Copeland's gender discrimination continued, and Plaintiff continued to be subjected to a severe and pervasive hostile work environment.

64.     Following Plaintiff's complaints and protected activity, Plaintiff was confronted by employees and subjected to abusive, retaliatory, conduct and comments about their reports of discrimination and harassment in the workplace.

65.     Plaintiff learned from their coworkers, that Mr. Copeland shared the details of their complaints to employees including at a party that Mr. Copeland attended, and referred to Plaintiff as a "bitch."

66.     Plaintiff immediately complained to Defendant Miguel Flores about Mr. Copeland's behavior.

67.     Mr. Flores stated that Mr. Copeland and Defendant Eduardo Millan's behavior was inappropriate, and that Mr. Copeland should be terminated.

68.     Plaintiff was then once again confronted by employees regarding their complaints against Mr. Copeland.

69.     In or around December 2021, Plaintiff complained to Defendant, Eduardo Millan of Mr. Copeland's discrimination and harassment.

70.     Defendant, Eduardo Millan simply responds by stating that he does not see the potential in Mr. Copeland to conduct himself in such a manner and that he will not terminate because of "jokes".

71.     Beginning in or around October 2021, Mr. Tysean Lucas began sexually assaulting Plaintiff on multiple occasions during working hours.

72.    The harassment and sexual assault began when Mr. Lucas began leaving the garage and coming to talk to Plaintiff in the service center repeatedly.

73.    Mr. Lucas was repeatedly told to stop bothering Plaintiff.

74.    Mr. Lucas would speak to Plaintiff about deeply personal issues centering around sex and his sexual relationships.

75.    Further, Mr. Lucas asked Plaintiff about issues related to who they were dating and asked them to provide reasons for choosing their partner at the time.

76.    Mr. Lucas asked Plaintiff regarding specific aspects of their gender identity and informed Plaintiff that they were a woman, and he can tell that just by looking at them.

77.    On one occasion, Tysean Lucas purchased a bed for Plaintiff.

78.    Before buying the bed Tysean Lucas asked Plaintiff many questions about the type of bed they would like and would not leave them alone about the bed.

79.    Mr. Lucas then bought the bed and made comments offering to help Plaintiff break in the new bed.

80.    Tysean Lucas made comments to Plaintiff regarding "pillow princesses" and defined the term for Plaintiff because they did not understand the meaning of the term.

81.    Mr. Lucas informed Plaintiff that a "pillow princess" is someone who is "lazy" when engaging in sexual intercourse.

82.    Mr. Tysean Lucas began called Plaintiff names including calling them a "freak" and said, "girls like you are always freaks in bed – you must be a freak."

83.    The above are just examples of the many comments of a personal and sexual nature to which Plaintiff was subjected by Tysean Lucas for almost a year.

84.    During this time there was a physical component to the sexual comments and conduct directed toward Plaintiff.

85.     Mr. Lucas began to constantly poke, prod, and touch Plaintiff during working hours.  Mr. Lucas would grab Plaintiff's arm and drag them to a more secluded area of the dealership.

86.     Mr. Lucas seemed to take pleasure from catching Plaintiff off guard and by putting his hands on their throat and applying pressure.

87.     Tysean Lucas subjected Plaintiff to unwelcome, physical touching, of a sexual nature.

88.     During the first week of June 2022, as Plaintiff was sexually assaulted as they left the Service Center.

89.     As Plaintiff attempted to exit, Tysean Lucas came from behind and grabbed them. At the time, Plaintiff was wearing a skirt and Tysean Lucas put both his hands on their backside and made sexual comments regarding their buttocks.

90.     Minutes later, Tysean Lucas began continuously slapping Plaintiff's buttocks.

91.     Plaintiff repeatedly begged Mr. Lucas to stop touching them.

92.     In or around February 2022, (it was a day or two before Valentine's Day) Tysean Lucas informed Plaintiff that he planned to purchase them a Valentine's Day present and informed Plaintiff that he wanted to take them out on a date.

93.     On another occasion, Tysean Lucas waited at the dealership for Plaintiff to finish work. Mr. Lucas then asked Plaintiff about their plans for the remainder of the evening.  Tysean Lucas began talking to Plaintiff about a "GameStop booty."

94.     Another morning, Tysean Lucas again put his hands on Plaintiff's throat and applied pressure.

95.     Plaintiff suffered a panic attack during this incident.

96.     At all times relevant, Plaintiff reported all of the above incidents to Defendants' management and human resources departments, who were well aware that Tysean Lucas posed a risk to Plaintiff's safety.

97.     Defendants took no actions to remedy Plaintiff's complaints of sexual harassment.

98.     On Friday, November 4, 2022, Plaintiff was sent home from work without pay.

99.     Defendants stated reason for subjecting Plaintiff to this adverse employment action was nothing but pretext to hide Defendants intentional discrimination and retaliation.

100.    Defendants have initiated a campaign of retaliation in response to Plaintiff's reports of discrimination and harassment and retaliation.

101.    The retaliation has been severe and pervasive and has further contributed to an already hostile work environment.

102.    On or around November 4, 2022, Defendants purport to have suspended Plaintiff without pay for wearing attire that Defendants stated was not appropriate for the workplace.

103.    Plaintiff had worn the same attire on previous occasions without any complaints, comments, or criticisms from Defendants.

104.    Moreover, Plaintiff was wearing a turtleneck sweater when they were accused of wearing the inappropriate attire.

105.    Moreover, Defendants did not send home other employees who were wearing clothes that were far more revealing and inappropriate than the clothes worn by Plaintiff that same day.

106.    Defendants have also used other employees to communicate with Plaintiff's family members including Plaintiff's sister.

107.    Madison Jones is an employee for Defendants who holds the position of Scheduling Manager.

108.    Madison Jones has no legitimate business reason to know about the person, private reports of sexual harassment, sexual assault, retaliation, and discrimination in the workplace.

109.    Still, Defendants made sure to notify Madison Jones about Plaintiff's reports of sexual harassment, sexual assault, retaliation, and discrimination in the workplace.

110.    Madison Jones contacted Plaintiff's sister in order to disparage Plaintiff and embarrass Plaintiff in connection with the sexual harassment, sexual assault, retaliation, and discrimination in the workplace.

111.    Madison Jones essentially stated that Plaintiff is a liar who should not be missing work and no that no sexual harassment or assault ever occurred.

112.    Plaintiff reported the illegal conduct of Madison Jones to Defendants, however, Defendants refused to take any meaningful action to investigate or remediate the ongoing harassment and retaliation.

113.    Defendants have taken the position that they will not speak to Plaintiff by phone, even when Plaintiff calls to make reports of discrimination and harassment in the workplace and retaliation.

114.    When Plaintiff did report discrimination and retaliation on Friday, November 4, 2022, Defendants informed Plaintiff that they were being insubordinate.

115.    Accordingly, Defendants have begun the process of subjecting Plaintiff to retaliation in the form of verbal discipline when Plaintiff engages in protected activity.

116.    Defendants still have not provided Plaintiff with an employee handbook.

117.    Defendants still have not provided Plaintiff with a process for reporting discrimination and retaliation.

118.    Defendants took no corrective and/or ameliorative action and continued to permit contact between Plaintiff and those involved in the sexual assault and harassment.

119.    Defendants continuously refuse to conduct appropriate and meaningful investigations.

120.    Defendants further refuse to implement precautions to prevent further discrimination and harassment against Plaintiff.

121.    Defendants have isolated Plaintiff in the workplace by preventing colleagues from communicating with Plaintiff as part of their campaign of retaliation.

122.    Defendants have denied promotion and raises for Plaintiff from their first report of sexual harassment, continuing to the present day.  This includes removing coworkers from the physical location where Plaintiff works.

123.    Defendants have denied training for Plaintiff thereby preventing advancement of their career interests.

124.    Similarly situated coworkers are not denied the same training opportunities.

125.    Defendants have denied Plaintiff the ability to communicate with their superiors in in connection with the discrimination and retaliation in the workplace.

126.    Defendants consistently subject Plaintiff to retaliation by cutting working hours and sending Plaintiff home anytime Plaintiff has the opportunity to work overtime.

127.    Prior to reporting the discrimination, harassment and retaliation, Plaintiff consistently worked overtime.

128.    Accordingly, Plaintiff's hours and pay have decreased because of their reports of discrimination and harassment in the workplace.

129.    Defendants have subjected Plaintiff to multiple adverse employment actions by sending Plaintiff home, reducing Plaintiff's hours, and subjecting Plaintiff to discipline under the intentionally false pretext of enforcing Defendants' so-called "policies."

130.    None of these instances involve policies that Defendants enforce against any other employee.

131.    Accordingly Defendants continually engage in disparate treatment and retaliation as part of a campaign of retaliation in a concerted effort to force Plaintiff to be subjected to a hostile work environment that no reasonable person would wish to work within.

132.    Defendants conduct meetings with the Plaintiff without notice and ignore their request to prepare for meetings.

133.    As part of Defendants' campaign of retaliation, Defendants have ambushed Plaintiff by forcing Plaintiff to attend unscheduled meetings in connection with Plaintiff's reports of discrimination, harassment and retaliation.

134.    When Plaintiff asks for additional time to prepare, Defendants subject Plaintiff to instructions that Plaintiff only has one opportunity to report concerns or Defendants will conclude the matter without Plaintiff's statement or input.

135.    Defendants have subjected Plaintiff to contact with employees who were terminated for harassing Plaintiff.

136.    Defendants have notified third parties of Plantiff's accusations as part of Defendants' campaign of retaliation.  This includes Plaintiff's family members who have no connection with Defendants.  This also includes other employees who Plaintiff works with, which contributes to the hostile work environment.

137.    To the present date, Defendants have denied acknowledging Plaintiff's numerous and repeated requests, verbally and in writing, for an employee handbook.

138.    Defendants continue to deny Plaintiff any access to written policies which might assist Plaintiff in reporting and ameliorating the ongoing severe and pervasive discrimination and harassment in the workplace.

139.    At no time from the date the sexual harassment, sexual assaults, and sexual discrimination began, to the present did Defendants have an employee handbook available to any of the individuals complicit in or subject to the discrimination and harassment in the workplace.

140.    As part of Defendants' campaign of retaliation, Defendants have subjected Plaintiff to intentionally false and misleading statements about past issues including issues related to Plaintiff's so-called "professional behavior."

141.    Plaintiff has no history of any disciplinary issues related to "professional behavior."

142.    By way of example, Defendants have accused Plaintiff of dressing inappropriately when there is no evidence to support this intentionally false and misleading accusation.

143.    Defendants have enacted so-called "policy" that is applied only to Plaintiff in an effort to single Plaintiff out for discrimination and retaliation to which other similarly situated employees are not subjected.

144.    Defendants have accused Plaintiff of "insubordination" as part of the campaign of retaliation in an effort to justify disparate treatment and adverse employment actions including but not limited to denial of promotions and raises.

145.    Defendants refuse to communicate via email with Plaintiff about any complaint of policy matters and refuse to talk about any issue when there might be a record of what is discussed.

146.    Defendants have subjected Plaintiff to an increased workload, and denying Plaintiff support from coworkers who are assigned to other stations in order to deny Plaintiff the ability to learn and grow in the company.

147.    This isolation is a part of Defendants retaliatory strategy so that Plaintiff does not have the ability or opportunity to progress in their career.

148.    Defendants take this action against Plaintiff, despite Plaintiff having the most seniority in their position.  Plaintiff is the most senior Receptionist and has about double the amount of seniority as the next similarly situated coworker.

149.    As a result of the discrimination and assaults, Plaintiff has requested intermittent leave based on the FMLA, as working at Mercedes Benz of Westchester causes them to experience trauma, panic, anxiety and fear for which psychological treatment has been necessary.

150.    Plaintiff has repeatedly reported the sexual assaults and asked Defendants whether Defendants plan to utilize the already installed video surveillance system.

151.    Defendants have stated that they have no plans to produce any video evidence and have stated that even if Defendants did have video footage, they would have erased it anyway.

152.    Defendants informed Plaintiff that the footage of the sexual assaults would not have been identified and preserved.

153.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

154.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

155.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

156.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

157.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

158.    Plaintiff has further experienced severe emotional and physical distress.

159.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

160.    Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment, and hostile work environment.

161.    Defendants discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

162.    The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

163.    Upon information and belief, Defendants' discrimination and retaliation will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing discrimination and retaliation.

164.    Plaintiff further claims constructive and/or actual discharge to the extent they were terminated from their position as a result of the retaliation and harassment

165.    Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

166.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

167.    Plaintiff was subjected to adverse employment actions including being denied pay raises and promotions, having their hours reduced and other changes to the terms and conditions of Plaintiff's employment.

## COUNT I

### Disparate Treatment in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
### (*Plaintiff v. All Defendants*)

168.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

169.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

a.    "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

170.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(d) further provides that "it shall be an unlawful employment practice for an employer… controlling… training or retraining, including on-the-job training programs to discriminate against any individual because of [their] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide training."

171.    Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to their compensation, terms, conditions, training, and privileges of employment because of their sex and gender identification.

172.    Defendants subjected Plaintiff to adverse tangible employment actions – defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, and decisions causing significant changes in their employment benefits.

173.    At all times material, Plaintiff identified as and used the pronouns, "they/them."

174.    At all times material, Defendants had knowledge of Plaintiff's sex and gender identification.

175.    At all times material, Defendant Millan held supervisory authority over Plaintiff with respect to their employment.

176.    At all times material, Defendants authorized Defendant Millan and others to take tangible employment action against Plaintiff as an employee of the Defendants.

177.    As alleged herein, Defendant Millan, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff with regard to the terms and conditions of their employment on the basis Plaintiff's sex and gender identification.

178.    At all times material, Defendants' discriminatory conduct was not welcomed by Plaintiff.

179.    At all times material, Plaintiff's sex and gender identification were the motivating and/or determinative factors in Defendants' decision to subject Plaintiff to adverse employment action.

180.    Defendants cannot show any legitimate, nondiscriminatory reasons for its employment practices and any reasons proffered by Defendants for its actions against Plaintiff are pretextual and can be readily disbelieved.

181.    As alleged herein, Defendants' discriminatory and harassing actions towards Plaintiff because of sex and gender identification are unlawful employment practices in violation of the Civil Rights Act of 1964.

182.    Defendants' unlawful employment actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

183.    Defendants acted upon a continuing course of conduct.

184.    Defendants Mercedes Benz of West Chester and Mercedes Benz USA, LLC are vicariously liable for the unlawful employment actions by Defendants against Plaintiff in the course and scope of their employment.

185.    As a result of Defendants' unlawful discrimination against Plaintiff in violation of Title VII, Plaintiff has suffered and continues to suffer emotional and financial harm.

### COUNT II
**Hostile Work Environment in Violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq***
**(*Plaintiff v. All Defendants*)**

171.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

172.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

a.    "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

173.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

174.    Defendants, in their capacity as Plaintiff's supervisor, intentionally discriminated against Plaintiff in the terms and conditions of their employment on the basis of Plaintiff's race and/or color.

175.    Defendants delegated to Defendant Millan and Defendant Strickland the authority to control Plaintiff's work environment, and Defendants abused that authority to create a hostile work environment.

176.    At all times material, Defendants' intentional, sex-based discrimination was not welcomed by Plaintiff.

177.    At all times material, the intentional, sex-based discrimination by Defendants was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

178.    At all times material, Plaintiff believed their work environment to be hostile or abusive as a result of Defendants' discriminatory conduct.

179.    The hostile work environment alleged herein unreasonably interfered with Plaintiff's work performance.

180.    The hostile work environment alleged herein was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

181.    Defendants failed to provide viable avenues for complaints of discrimination and harassment.

182.    Defendants retaliated against Plaintiff for their complaints of discrimination and harassment.

183.    Defendants acted upon a continuing course of conduct.

184.    Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

185.    As a result of the violations of Title VII complained of herein, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT III
### Unlawful Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*
### *(Plaintiff v. All Defendants)*

186.    Plaintiff incorporates by reference and realleges every allegation in this Complaint as if fully set forth herein at length.

187.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

188.    As alleged herein, Plaintiff engaged in protected activity under Title VII including, but not limited to raising formal and informal complaints opposing Defendants' discriminatory employment practices.

189.    At all times material, Plaintiff acted under a good faith belief that their right to be free from unlawful discrimination in the workplace was violated.

190.    Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

191.    Plaintiff's protected activity was the motivating and/or determinative factor in Defendants' decision to take materially adverse action against Plaintiff.

192.    Defendants acted upon a continuing course of conduct.

193.    Defendants' unlawful actions towards Plaintiff were intentional, willful, and made with reckless indifference to Plaintiff's federally protected civil rights.

194.    Defendants' action to take materially adverse action against Plaintiff in retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964.

195.    As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**<u>JURY DEMAND</u>**

Plaintiff requests a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all actual damages for physical injuries caused to Plaintiff, compensatory damages, emotional distress and punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By: _____/s/ Seth D. Carson_____
    Seth D. Carson
    1835 Market Street
    Suite 2950
    Philadelphia, Pennsylvania 19103
    (215) 391-4790
    *Attorney for Plaintiff, Blake Modlin*

DATED: January 23, 2023