IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLAKE MODLIN,<br>  *Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| PIAZZA MANAGEMENT<br>COMPANY *et al.*<br>  *Defendants* | : | No. 23-279 |

## MEMORANDUM

PRATTER, J.                                  NOVEMBER 7, 2023

Plaintiff Blake Modlin[1] alleges a series of instances of sexual harassment and assault allegedly experienced while a receptionist at Mercedes Benz West Chester, an authorized dealership of Mercedes Benz vehicles. In the Amended Complaint, Ms. Modlin included claims against Mercedes Benz USA, who filed the instant Motion to Dismiss arguing that Mercedes USA had no control over the day-to-day work operations of Ms. Modlin. The alleged behavior of the other defendants towards Ms. Modlin represents experiences that no one would find decent or desirable. However, at this time, the Court's focus is on the inclusion of Mercedes USA in this matter. At oral argument, the Court observed Ms. Modlin's counsel spin his wheels over why Mercedes USA was ever named as a defendant. However, a plausibility standard is not the same as "the best or nothing."[2] The Amended Complaint is just sufficiently pled to meet the low

---

[1] Ms. Modlin avers in the Amended Complaint a preference for they/them pronouns. Ms. Modlin's Response to the Motion to Dismiss refers to Plaintiff as "Ms. Modlin."

[2] Mercedes Benz started using "The best or nothing" slogan since June 2010. Matthias Krust, *Mercedes Launches New Marketing Slogan; Polishes Up Its Star*, Automotive News Europe (June 16, 2010, 1:00 A.M.), https://europe.autonews.com/article/20100616/COPY/306169991/mercedes-launches-new-marketing-slogan-polishes-up-its-star.

1

threshold needed to survive a motion to dismiss. Thus, the Court must deny Mercedes USA's Motion to Dismiss.

### BACKGROUND

Blake Modlin worked as a receptionist at Mercedes West Chester starting in August 2021. Ms. Modlin alleges that the General Sales Manager, Eduardo Milan, began subjecting Ms. Modlin to severe sexual harassment by forcing Ms. Modlin into his office daily and by attempting to coerce Ms. Modlin into accompanying Mr. Millan to Las Vegas and share a hotel room with him. For example, Ms. Modlin alleges that Mr. Millan consistently asked Ms. Modlin questions about a trip Ms. Modlin was planning to New York with a male friend, probed Ms. Modlin about the sleeping arrangements of the trip, and stated that he, Mr. Millan, would watch out for them on the trip. He allegedly asked other questions over many hours about issues related to sex and sleeping arrangements. Ms. Modlin alleges that Mr. Millan, a man in his fifties, used his position and power at Mercedes West Chester to coerce Ms. Modlin into a sexual relationship with him.

Ms. Modlin alleges that several other employees, including Tysean Lucas and Brandon Copeland, engaged in sexual harassment and/or discrimination as well. For example, Ms. Modlin alleges overhearing Mr. Copeland tell employees that Ms. Modlin was having sex with Mr. Millan. Ms. Modlin allegedly reported Mr. Copeland's harassment to Human Resources,[3] though the discrimination continued. Ms. Modlin alleges that Mr. Lucas purchased a bed for Ms. Modlin and would repeatedly ask questions about bed preferences before he made the purchase. After buying the bed, Mr. Lucas allegedly asked Ms. Modlin how Ms. Modlin would break in the bed and made other inappropriate comments. Mr. Lucas also allegedly would poke, prod, and touch Ms. Modlin during work hours, including by grabbing Ms. Modlin's arm and heading into a more secluded

---

[3] Ms. Modlin does not identify whether this was Mercedes West Chester's or Mercedes USA's Human Resources Department.

area of the dealership. Mr. Lucas allegedly sexually assaulted Ms. Modlin in July 2022 when he came from behind, grabbed Ms. Modlin's backside, and made sexual comments to Ms. Modlin.

Ms. Modlin alleges reporting all of these incidents to management and human resources, though nothing was done to remedy the situation. In November 2022, Ms. Modlin was sent home from work without pay, allegedly because Defendants suspended Ms. Modlin for wearing attire (allegedly a turtleneck sweater) not appropriate for the workplace. Madison Jones, the Scheduling Manager, allegedly learned from Defendants about Ms. Modlin's reports of sexual harassment and assault and then called Ms. Modlin's sister to disparage Ms. Modlin in connection with those reports. Ms. Modlin reported Ms. Jones's behavior to Defendants, but Defendants refused to take any action. Ms. Jones is not a defendant in this suit.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissing a complaint, in whole or in part, if the party filing a motion to dismiss can demonstrate that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant." *Conrad v. Pa. State Police*, 902 F.3d 178, 182 (3d Cir. 2018) (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)).

"However, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Doe v. McDonald's USA, LLC*, 504 F. Supp. 3d 360, 364 (E.D. Pa. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[t]o prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## DISCUSSION

Mercedes USA makes two arguments: (1) that Ms. Modlin has failed to allege facts establishing Mercedes USA as their employer and (2) that the Amended Complaint should be dismissed as an improper "shotgun pleading." The Court analyzes each argument in turn.

### I. Mercedes USA as a Joint Employer

Two entities may be "joint employers" for purposes of Title VII. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015) (citing *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997)). "In determining whether an entity is an 'employer' for purposes of Title VII, [the Court of Appeals for the Third Circuit] consider[s] the factors articulated in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992)." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 203-04 (3d Cir. 2014). The "essence" of the *Darden* test is whether the entity had the "right to control the manner and means by which the product is accomplished." *Id.* (quoting *Darden*, 503 U.S. at 323). "When determining whether a joint employment relationship exists, district courts in this circuit focus on the following three factors: (1) the entity's authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) its day-to-day supervision of employees, including employee discipline; and (3) its control of employee records, including payroll, insurance, taxes and the like." *McDonald's*, 504 F. Supp. 3d at 366 (quoting *Plaso*, 553 F. App'x at 204-05) (internal quotation marks omitted).

Here, under *Darden*, Mercedes USA argues that only Mercedes West Chester "(1) hired [Ms. Modlin]; (2) assigned [Ms. Modlin] to the position; (3) communicated with [Ms. Modlin]

4

regarding the manner and method of [the] working conditions; and (4) ultimately terminated [Ms. Modlin's] employment." Mercedes USA further argues that Ms. Modlin's only pleadings regarding Mercedes USA's control over the manner and method of working conditions included setting standards and that Ms. Modlin has not pleaded facts sufficient to show that Mercedes USA was responsible for the adverse action Ms. Modlin faced. At oral argument, Mercedes USA argued that the key variable to consider was whether Mercedes USA had control over Ms. Modlin, which Mercedes USA argues it did not.

In reply, Ms. Modlin puts forward a list of factual allegations that encapsulate the additional facts pled in the Amended Complaint arguably demonstrating that Mercedes USA was Ms. Modlin's joint employer. These include (1) that Ms. Modlin was trained according to Mercedes USA's corporate standards; (2) that Ms. Modlin was required to work within strict guidelines, policies, and procedures purportedly enforced by Mercedes USA; (3) that employees working at Mercedes West Chester must be approved and certified by Mercedes USA; (4) that Ms. Modlin's supervisors informed employees that they were required to attend Mercedes USA trainings; (5) that the individual defendants in this case were required to attend Mercedes USA trainings; and (6) that Ms. Modlin was informed that the discipline Ms. Modlin experienced was governed by Mercedes USA policies.

### A. Mercedes USA's Authority to Hire and Fire Employees, Promulgate Work Rules and Assignments, and Set Conditions of Employment

In *McDonald's*, the court held that the first *Darden* factor weighed against the plaintiff when the plaintiff alleged that McDonald's "controlled the means of conducting business and supervising employees, including areas of business operations, inventory, booking and accounting" because such allegations were conclusory. 504 F. Supp. 3d at 366. Allegations that

McDonald's dictated what uniforms the employees wore and provided detail in operations manuals about how the restaurant was managed were also not sufficient for the first factor. *Id.*

In *Myers v. Garfield & Johnson Enterprises, Inc.*, the court found that the plaintiff *had* met the first factor when she alleged that she "was covered by Jackson Hewitt's sexual harassment and other workplace policies" and "that Jackson Hewitt had the authority to require G & J [the franchisee] managers to submit to training and to obey all applicable laws." 679 F. Supp. 2d 598, 609-10 (E.D. Pa. Jan. 14, 2020). The plaintiff there attached the Jackson Hewitt Code of Conduct to the Complaint to support her allegations. *See id.*

Here, Ms. Modlin's allegations appear somewhat closer to the fact pattern in *Myers* than in *McDonald's* because Ms. Modlin alleges that Mercedes USA's policies governed dismissal, much like Jackson Hewitt's policy on sexual harassment governed the matter there. Further, like in *Myers*, Ms. Modlin alleges that managers at Mercedes West Chester had to submit to training from Mercedes USA. However, as compared to *Myers*, Ms. Modlin did not attach a Mercedes Code of Conduct. In fact, no document is attached to the Amended Complaint to support the allegations. This could cause the Court to question whether Ms. Modlin's allegations against Mercedes USA are merely conclusory in nature and, thus, similar to those in *McDonald's*. However, taking the allegations at face value and as true, as required at this early juncture, the first factor slightly weighs in favor of finding Mercedes USA to be a joint employer.

### B. Day-to-Day Supervision

In *McDonald's*, the plaintiff alleged that McDonald's had the control and ability to mandate business managers to receive training. 504 F. Supp. 3d at 366. However, the court found that this factor weighed against the plaintiff when she did not allege that she or the franchisee employee received any such training or that McDonald's engaged in employee discipline. *Id.* Ms. Modlin, however, has alleged that Mercedes USA must review and approve new hires at Mercedes

6

West Chester, which distinguishes Ms. Modlin's situation from that of Ms. Doe in *McDonald's*. Furthermore, Ms. Modlin alleges that the assigned daily work did not change when Piazza took over management, which is arguably indicative of Mercedes USA and its policies governing day-to-day work. However, Ms. Modlin alleges only that employees were *required* to attend Mercedes USA trainings, not that they actually *did* attend such trainings, suggesting that Mercedes USA may have had a lesser degree of control similar to the facts in *McDonald's*. At the same time, Ms. Modlin does aver having been trained according to Mercedes USA standards. Ms. Modlin also alleges that Mercedes USA's policies governed the discipline faced at Mercedes West Chester.

In *Myers*, the court found the second factor weighed in favor of the plaintiff when Jackson Hewitt reviewed all tax returns prior to filing, assisted employees who had problems with the computer system, required the plaintiff undergo specific training, and monitored the completion of such training. *See* 679 F. Supp. 2d at 610. Here, however, Ms. Modlin only alleges that Mercedes USA required *others* to undergo such training and not necessarily that Mercedes USA monitored the employees to ensure the trainings were completed. Other than Mercedes USA providing the vehicles for sale, there is no allegation that Mercedes USA was actually involved in the daily operation and supervision of Mercedes West Chester. Thus, the second factor is at most neutral on the issue at hand.

### C. Control of Employee Records

A number of district courts elsewhere in the Third Circuit have found in favor of the plaintiff on the third *Darden* factor when the plaintiff averred that the franchise agreement or a similar document provided the franchisor the right to inspect the franchisee's books. *See, e.g., A.H. by and through Hunt v. Wendy's Co.*, No. 3:18-cv-0485, 2018 WL 4002856, at *6 (M.D. Pa. 2018) (finding that the franchisor having "the right to examine the books, records, and tax returns of Franchise" indicated control of employee records); *Harris v. Midas*, No. 17-cv-95, 2017 WL

7

5177668, at *2 (W.D. Pa. 2017) (finding same); *see also McDonald's*, 504 F. Supp. 3d at 367 (finding that McDonald's maintaining the right to inspect all aspects of the restaurant including bookkeeping may support a finding of control over employee records but ultimately holding that the factor was at best neutral because the plaintiff did not allege that McDonald's had authority to review payroll or personnel files not pertaining to the sale of its products).

Here, Ms. Modlin does not allege that Mercedes USA had any control over Mercedes West Chester's bookkeeping. There is no allegation that Mercedes USA has any control over Mercedes West Chester's books, records, or tax returns. Thus, the third factor weighs against Ms. Modlin.

### D. <u>Balance of the Factors</u>

Considering the factors all together, Ms. Modlin has just met the low bar needed to allege that Mercedes USA had control sufficient at this stage to plead for now that Mercedes USA was a joint employer with Mercedes West Chester over Ms. Modlin. The alleged facts that Ms. Modlin's daily work was governed by Mercedes USA policies, that Mercedes USA approved of Mercedes West Chester's employees, and that Ms. Modlin's disciplinary procedures were governed by Mercedes USA create a modestly plausible scenario in which Mercedes USA had control over Ms. Modlin and Mercedes West Chester. Thus, the Court finds that Ms. Modlin has sufficiently alleged Mercedes USA as a joint employer.

### II. Ms. Modlin's Amended Complaint as a "Shotgun Pleading"

Mercedes USA next argues that Ms. Modlin's Amended Complaint is a "shotgun pleading" that violates Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Mercedes USA argues that the allegations "are vague and conclusory as to [Mercedes USA's] violations of Title VII and do not provide 'enough specific details as to each claim to put defendants on notice of what they are accused of doing.'" Ms. Modlin does not address this argument in the Response.

The Court of Appeals for the Eleventh Circuit "has articulated the bulk of existing law in this area" and is oftentimes cited by district courts in the Third Circuit for this law. *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 & n.3 (E.D. Pa. 2017). There are four categories of shotgun pleadings:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 859 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) (cleaned up). "The 'unifying characteristic' of these four types of shotgun pleadings 'is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Id.* (quoting *Weiland*, 792 F.3d at 1323).

Here, Ms. Modlin's Amended Complaint spans 28 pages and includes three claims: (1) disparate treatment in violation of Title VII, (2) a hostile work environment in violation of Title VII, and (3) unlawful retaliation in violation of Title VII. Ms. Modlin makes each claim against all defendants, though does not always list with specificity how the claim applies to each. One allegation merely states that "[a]t all times material, Defendants' discriminatory conduct was not welcomed by Plaintiff." Ms. Modlin does not specify *whose* conduct was alleged here.

Indeed, Ms. Modlin certainly could have pleaded with more specificity. For example, when Ms. Modlin avers having complained to Human Resources, Ms. Modlin does not specify whose Human Resources Department, Mercedes USA's or Mercedes West Chester's, was notified about

9

the sexual harassment and assault. Similarly, Ms. Modlin does not specify to which defendant Ms. Modlin reported Ms. Jones's harassing behavior.

However, Ms. Modlin's Amended Complaint does not rise (or, as it were, descend) to the level of a shotgun pleading. The Amended Complaint is sufficiently clear that all three claims are alleged against Mercedes USA for its alleged role as a joint employer where it, as Ms. Modlin's joint employer, was responsible for the alleged disparate treatment, hostile work environment, and unlawful retaliation that Ms. Modlin allegedly experienced. The Amended Complaint contains separate counts premised on separate alleged facts against all defendants that, although certainly not perfect or a model for pleading, specifies that all were responsible or played a role in the alleged discrimination, hostile work environment, and retaliation. In other words, the Amended Complaint gives Mercedes USA "adequate notice of the claims against [it] and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Thus, the Amended Complaint is not dismissed as an improper "shotgun pleading."

## CONCLUSION

Though the Court questions the inclusion of Mercedes USA and whether discovery will clarify its role as Ms. Modlin's joint employer,[4] the Amended Complaint includes more than barebone, conclusory allegations of Mercedes USA's role in this matter. Thus, the Court denies Mercedes USA's Motion to Dismiss.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] If Mercedes USA is confident that it is not a joint employer of Ms. Modlin, then Mercedes USA may seek early discovery regarding its status as a joint employer so that it may file an early motion for summary judgment if it so chooses.